My name is Scott DeWolf, and I represent Harvey Morton, the Chapter 11 trustee, the appellant in this case. In the limited time that I have today, I'd really like to focus on one issue, and that issue is this. Whether the district court erred in finding that the issue of whether the trustee can raise the lack of Navajo Nation approval of the overriding royalty interest is moot because he affirmed the bankruptcy judge's exclusion of the November 10, 2010 letter from the Navajo Nation. Respectfully, I think the court erred. That is not moot if you exclude the November 10, 2010 letter for this reason. There is still a live controversy between the parties, even if that letter is excluded, and the reason is essentially, in my view, twofold. First, the Navajo Nation Code section at issue, section 605, provides that no overriding royalty may be created by any transfer authorized hereby without the consent of the Minerals Department of the Navajo Nation, nor shall such overriding royalty be approved if it's determined by the Minerals Department that it will have an adverse impact that prevents full recovery of the mineral resources. Here, Judge Houser in the bankruptcy court ruled that that language is clear and unambiguous, and no one has challenged that finding, and I don't think anyone would. That is clear. You cannot create an overriding royalty interest without approval of the Minerals Department of the Navajo Nation. There's no dispute. It's stipulated in this case that the Appalese have never sought nor obtained the approval of the Navajo Nation for the overriding royalty interest that they received from Briggs-Cockerham. The trustee was the owner of the Hogback lease under an approved assignment by both the Navajo Nation and the Bureau of Indian Affairs. This litigation is about trying to quiet title to these claims of these overrides given by Briggs-Cockerham. In that situation, the trustee should be able to raise those issues because the cases relied upon by Judge Houser and Judge Lindsey are distinguishable and I really don't think they apply. I believe this is an issue of first impression. There is no case directly on point deciding who has standing to raise the lack of Navajo Nation approval under the Navajo Nation code. The cases that were relied upon in both the bankruptcy court and in Judge Lindsey's opinion affirming Judge Houser are principally three. The first case is the Chuska Energy case, 854 F 2nd, 727 out of the Fifth Circuit. That case, my position, is not addressing who has standing to raise the lack of approval of an assignment under federal law. That case was a jurisdictional question of whether the case could be removed based on the affirmative defense of Mobile that the assignment of the oil and gas lease on Indian land had never been approved by the Secretary of the Interior. And the court in the Fifth Circuit expressly said that there's no jurisdiction here, but Mobile can, in state court, raise its defense of illegality for the lack of approval. Now, the language that is cited against the trustee as to why we don't have standing to raise the lack of approval. Is in the section dealing with preemption. And what the court, as I read, is the language that's cited against us. What the court, I believe, is saying there is that while the Secretary of the Interior or the Navajo Nation or any other Indian nation that has an issue with an unapproved assignment could bring a federal cause of action under those statutes. That is why they would have to bring it in federal court because it's a federal issue. But a party in the Chuska case could raise illegality in state court. I don't think that opinion is saying the trustee doesn't have standing. Let me ask you a question. To what extent is the not, and I will say, this is a very complex case factually and legally. We don't get many involving the Navajo Nation approval statute, and it obviously was to Judge Houser. But to what extent is this question of Navajo approval similar to any other condition precedent? I believe that the issue here is different in this sense. That's a friendly question, because this fellow goes off and starts selling these overriding royalty interest before and after the bankruptcy. And in a sense, none of them has that level of approval. Well, why is that any different from if he had sold overriding royalties, but they never paid for them? So they have a piece of paper in hand, but they never in fact even paid the fraudster for them. And then who would have, quote, standing to raise that that's a bare piece of paper and you basically stole it? I mean, why is this different from that circumstance, or would it be different? I'm going to take your hypothetical in two parts. Why is it different, I believe, is this. Because the interest in question, these overrides, don't exist. All of the cases that are relied upon, what the courts have held is, we're not going to let a party to the transaction who's assigning the lease that needs to be approved, try to attack it for the lack of approval, because in all those cases they hold the actual interest, the oil and gas lease, has been approved, and can be assigned, but needs that approval. Well, it can't be attacked by the direct parties. Yeah. Right. And the difference here, though, is- You're not a direct party. Well, I'm not a direct party. I do think that is one distinguishing factor. I apologize for interrupting. The big distinction, though, is as we sit here today, these overriding royalty interests that have been purportedly sold don't exist. The statute says you cannot create one without approval. This is, in all of the cases that are in here, the underlying lease was valid. The question was, is the assignment of the lease itself void or voidable? And the courts uniformly say, those questions are voidable, those transactions are voidable because the underlying lease is fine. You just have to go get approval. Here, there is no overriding royalty interest that has ever been approved by the Navajo Nation. And that's what the bankruptcy court held, that without consent, the overrides are void. Yes, Your Honor. In Judge Houser's ruling, she states, if I am wrong, that Trustee Morton can actually raise the lack of approval, then the outcome is these are void because they never been. And that's what I think the big distinguishing factor is here, is that this statute says you can't create them. So what is being transferred here doesn't exist. This, Briggs-Cockerham is trying to create an interest in property that doesn't exist now. And the second way I'd answer your hypothetical is this, why should the trustee have standing to raise this? On these facts, the trustee is trying to quiet title to property in the estate. Why would any other owner of property not be able to raise that the interest somebody is claiming is invalid when they're trying to clean up the title? This is not a circumstance like any of the cases that have been used in the opinions we're appealing, where we're a party to the transaction. The trustee didn't make the assignments, the debtor didn't make the assignments of the overriding royalty interest. And what the debtor assigned was not the lease, he assigned an override that by Navajo Nation code requires their approval. And that's really, I believe, dispositive of this appeal. And that's why I believe that the court, Judge Lindsay respectfully erred when he determined after excluding the October 12th, 2010 letter, that this issue is moot. It cannot be moot in our view because you still have a live controversy between the parties. And you have to still go through the analysis. All of the cases are distinguishable, and I believe that for that reason, I'll yield the rest of my time, and we would respectfully request that you reverse. Thank you, Mr. DeWolf. Mr. Barton, representing the office, we'll hear from you. May it please the court. The district court's ruling, sitting as an appellate court, that it was not necessary to decide the standing issue was practical, and it held the trustee to his own position. The bankruptcy court held that Briggs-Cockerham, who I'll refer to as BC, that BC had title. That the assignment into BC, BC was then the grantor to all of the Ory assignments. That the assignment into BC was valid unless and until it was not approved. The trustee did not challenge that ruling in this appeal. The district court's ruling about standing necessarily also recognizes that the Ory assignments can only be invalidated by proof that Navajo Nation approval was sought and was denied. The trustee's own argument was that the November 10th letter from Mr. Johnson is the only evidence that the Navajo Nation will not consent to the Ory assignments in the future. But I thought the statute said that the override can't be created without their approval. Or these interests can't be created without their approval. That's correct. And your party, you know, neither has sought nor obtained their approval. That's correct. And what Judge Houser recognizes, I think a fundamental problem with the trustee's argument is the trustee is saying, well, if I can raise the lack of consent, then I win. And that's exactly not what Judge Houser held. Well, she said if she was wrong on the first point, he wins. No. The alternative holding by Judge Houser recognized that approval could be sought and obtained in the future. And that there is no deadline in the Ory assignments for seeking Navajo approval. But that, you know, that really doesn't make any sense. Because, I mean, assuming, unless these leases are totally undeveloped, if they're developed and producing, money is gushing out every minute of every day. And the money for an override either has to be put in escrow forever for your owners, or more likely, they would like to get their hands on it. So, you know, you just can't use this, leave this up in the air for the sake of this litigation. It makes no sense. The trustee is saying, I get to unilaterally decide that if there's not consent, as of the date of trial, then the assignments are void. And Judge Houser said, no, that's not correct. What she held was that the mineral interests have not yet been created. But the trustee ignores the distinction between the contractual and equitable rights and title that are under the agreements, on the one hand, versus the mineral interest itself that will ultimately be created once the Navajo Nation approves it. And so, if you read- Well, why didn't you, as soon as you got sued, go out and get their approval? Because of the circumstances of the fact that- You didn't know whether you had title, because- The title was at issue. And it was prudent to wait until there was a determination, a court order, like Judge Houser's opinion, that says that the ORE assignments are valid until they are not approved. But it doesn't mean that they are void at this time. And if you look at Judge Houser's opinion, it is not that, okay, if the trustee does not have standing, then the appellees win. But if the trustee does have standing, then the trustee wins. That's not what her opinion is at all. She ultimately holds that whether or not there is standing, the trustee is not entitled to an order that the ORE assignments are void. Well, and I do not, well, I have a preliminary question, and that is, as I understood it, she said that the trustee's right to the hogback lease is based on a contingent reversionary interest. That's right. And you didn't appeal that. And has that been cleared up? Have they got more than a contingent reversionary interest in the hogback lease at this point? I don't believe so, Your Honor, and that's an important point, because the trustees, the only property of the estate was this contingent interest. So the question becomes, where's the rest of the title? And the bankruptcy court held that it was in BC who then made these overriding royalty assignments. And what the bankruptcy court held is that the mineral interests themselves have not yet been created. But she clearly was holding that the lack of consent on the date of trial just was not dispositive, and whether the trustee has standing or not does not result in an opinion that the ORE assignments are void. And I think the district court, in sitting as an appellate court, looks at the full context and extent of the bankruptcy court's opinion and says, well, if there's no evidence that the Navajo Nation will not consent to the overriding royalty interests in the future, then there's no need to decide the standing issue. And as the court held, that it just was not necessary for the district court to affirm, and I want to back up a minute because I think I may have not fully addressed your question. You indicated earlier that these were conditioned precedents. And what Judge Houser held was the opposite, that the approval requirements operate as a condition subsequent. The rule of construction that was in the Hertzel case that the bankruptcy court relied on is that a statute that declares an act void for the protection of a certain class of parties is only voidable, because that class of parties can ratify or otherwise approve of the act. And so, Judge Houser is looking at these agreements as being valid unless and until they are void, looking at the approval requirement as being a condition subsequent. And her opinion and the transcript of some of the hearings clearly indicates that Judge Houser was looking at it as being a condition subsequent, and that's why Judge Houser holds that, well, okay, as of the date of trial, the mineral interests have not yet been created. But that was not dispositive, because there's no deadline for obtaining the consent, and therefore, because it is a condition subsequent, the trustee was not entitled to an order that they were just void ab initio. Now, there is a fund of money involved here, right? There is a fund of money. Million some dollars. That has, as I understand it, has been escrowed with respect to those Tory assignments, like Numbers 28 through 66, that the Judge Houser actually avoided those, but then granted a lien, and. You mean the pre-petition ones? No, Your Honor. The, there was a, and one of the elements of the defense was that there be proof of fair equivalent value, and so what Judge Houser held was that as to Orrey Numbers 28 through 66, I believe, not including Mr. Pugh's Orrey Number 57 or whatever his, that as to those, there was not evidence of fair equivalent value, and therefore, under Section 549C, even though the assignments are avoided, that those purchasers are entitled to a lien for the amount that was actually. Right, that they were paid. That they paid. Okay, so that fund, as I understand it, just applies to those. Orrey's Numbers 1 through 27 didn't have that issue, and so they actually have their interests, their contractual and equitable. Those aren't an issue up here, right? They are, with respect to the standing issue. Okay, well, I guess my question is, or my comment is, it is so counterintuitive to me, as regards Numbers 1 through 27, for the court to hold, in essence, those rights have not even been created, but if the trustee loses here, they're going to get the royalties, right? Well, the issue is they have the right to seek the approval. Correct, but then what happens to the money? Yeah, so what happens to the money, which is in, presumably, escrow somewhere? Well, and I'm- If the Navajo Nation never gives approval. Right, and I, you know, I- Which I don't know why it would, but anyway. Right, well, they might, because any interest granted to the Orrey assignments is not going to come out of the lessor's interest. It's carved out of the lessee's interest, and so the Navajos, it's not going to reduce the royalty paid to the Navajos. Put it that way, but in answer to your question, I don't know that the record reflects that the deep formation that these Orrey assignments apply to are even being produced. It's my understanding that the lease is held by production on a shallower interest. There may be production contemplated and that sort of thing. I think the operator, at that point, you know, would have the ability to hold the- Commence another lawsuit. No, just hold that money in suspense until- Until you commence another lawsuit. Until it's ultimately resolved, but in looking at what was before Judge Hauser, there's just no error in her holding that the Orrey assignments are not void, either because the trustee does not have the right to raise the lack of statutory approval. The trustee is trying to enforce a statutory provision and- And not an outside party? No, I think some of the cases are like that. The Hertzel case is an example of a case where Mr. Hertzel was actually a non-party to the agreement that he was trying to say was void for lack of approval, and the court applied the same standing principle. In Cheska, this court's holding in Cheska is helpful because of the context in which it was raised. It was a state court lawsuit that was removed to federal court, and the basis of removal, as I understand the opinion, was that the assignee was claiming that the assignment was void for lack of approval under one of the statutes, one of the United States statutes, and therefore was saying it was a federal question because of that statute. In addition, that assignment was conditioned. It was actually a condition preceding case where the assignment says, this is conditioned on getting approval from the, I think it was the BIA in that case. So there were two issues. One, the right to raise the lack of statutory approval, and then secondly, the right to say that the condition in the contract had not been complied with. What this court held in Cheska is that, well, just because the Navajo Nation and the Secretary of Interior would have standing in federal court to challenge the failure to comply with the statute, does, and then went on to say, does not confer that similar right to a non-tribal litigant that the statute was not designed to protect, which is like the trustee in this case. Then the court further went on to say that contractual defense, the failure of the condition preceding, that can be raised in state court. But as to the right to enforce a statute, this court's holding in Cheska applies and is persuasive because that was the context in that case. And then we've cited the court to the San Xavier case, apologies for the pronunciation, and the Rosebud Sioux case, both of which were instances where you had parties trying to claim that agreements were void because of the lack of obtaining approval that's required under a statute. And those cases say, no, relying on this court's opinion in Cheska, that because those statutes are not designed to protect these non-tribal parties, they don't have standing. And that standing principle, it's similar to the rule that's applied in negligence per se cases. A party cannot claim that the violation of a statute constitute negligence per se if he's not in the class of persons that sought to be protected by that statute. But you're talking about titled real property, you know, and it seems to me not fair at the very least to say that somebody who's claiming they're in the chain of title doesn't have to raise, isn't able to raise a title defect of another person. And I think one of the distinctions in that is that the trustee's not trying to raise contractual issues related to his title. He's trying to enforce a statute, the lack of consent of a statute. He's trying to clear his title by making sure that yours isn't a competing title. That, yes, but not on the basis of any contractual right that he would have. He's trying to enforce a statute that was not designed to protect him. Well, it's like the recording statute. You know, somebody with an unrecorded, you're not saying you're in the recorded chain of title and someone with an unrecorded interest from Papa Joe comes in and you're saying I can attack that because it's not in the chain of title. Well, and I understand the court's struggling with it. I think it's important, and I may run out of time if you'll allow me to get this out. Related to that title issue, I think it's important that what the trustee is really asking the court to do is to give him preferential treatment over any other litigant because of what he calls unique circumstances. I think it's important for the court to note that it's really not unique here. The circumstances of this case, including the title conundrum, is the result of the trustee's own lack of diligence. The bankruptcy court held that the trustee ignored storm warnings that would have alerted the trustee to the existence of transfers out of B.C. had the trustee exercised diligence. If the trustee had done a title search upon being appointed, he would have learned of the B.C. assignment and of the recording of the very first Ory assignment. Had the trustee filed a copy of the bankruptcy petition in the deed records, most of the Ory purchasers would have been put on constructive notice of the bankruptcy, but instead of exercising diligence, the trustee proposed a plan to sell the leases that did not account for the existence of the Ory assignments, and that's not the kind of circumstance that warrants- Let me just ask you this one question, though, and maybe it's a stupid question, but the trustee has prevailed over B.C., has it not? Well, if- In regard to the illicit assignment of the lease to B.C. in late 06, right? From a title perspective? Yeah. Well, the trustee, the bankruptcy court made it clear that because the B.C. assignment, because B.C. had title, title had to get back to the estate for the estate to be able to sell it, and what Judge Houser basically held is that when that happens, the trustee argued at trial that it had already happened, and Judge Houser disagreed with that, but clearly what she was saying, Your Honor, is that once title- Okay, why don't we begin to wind down a little bit here? I know, but let me just pursue- My point is that it was my impression, maybe we have to take it up and rebut, but my impression was that the debtor prevailed over B.C. Because B.C. was attempting to take the asset and get it away from creditors, I presume. That being the case, again, it seems real counterintuitive that people who took from the person who took from the bankruptcy estate have suddenly made this by alchemy into enforceable rights. That's my final comment. Okay, I think we will- I take it you disagree. I do, and I'd be happy to respond, Okay, I'll give you one minute to respond to her. One minute, but we've got to move this thing on now. Yes, Your Honor. What Judge Houser held is that because B.C. had title, B.C. had title to make these Rory assignments, so when the trustee and B.C. settled in the bankruptcy, settled their claims, what the opinion is saying is that title still has to get back to the trustee out of B.C. and that when that happens, that the trustee will then take title subject to what B.C. did with it in the interim. Okay, all right. Thank you, Mr. Bartlett. Okay, and now we'll have just, I mean, Mr. Wolf will have a rebuttal from you. Yes, sir. In answer to your question, Judge Jones, yes, the trustee has gotten the lease back from Briggs-Cockerham or any claimed interest based on the settlement in the plan, and Judge Houser's ruling in the opinion makes clear that Briggs-Cockerham can never seek approval of these Orys because of the plan, and so that's why this issue is also not moot. When the appellees argue that B.C. holds title, I would respectfully disagree. That's not what Judge Houser said. What she took issue is that there had been a transfer, and there's this contingent reversionary interest at the time of the petition that could have given, or that did give the Valisito an interest and make it property of the estate. Now, what she held, though, was given what happened subsequently during the case and the approvals by the Navajo Nation and the BIA of the assignment from Tiffany, the original unquestionable holder of the lease to the debtor Valisito, was that the debtor received or had all the titles to the lease, and then this issue came up on trying to close the sale under the title, though, respectfully, this is a lease on Indian land. According to federal regulations, the only place to check title is in the land title office created under the federal regulations 25 CFR 150.3. Recording in the county, which is a state line of title, does no good, and so we respectfully disagree with that, but I will leave you with this to decide why this is the right case and the circumstances justify the trustee being able to raise that they don't have approval. Consider the situation a little differently. Let's say that Briggs-Cockerham received the lease, which there was a transfer out here, and let's say that the trustee had to avoid that transfer of the lease under chapter 5, 547, a preference 548, a fraudulent transfer, a state law fraudulent transfer. During the pendency of that litigation, Briggs-Cockerham continues to make assignments of overriding royalty interest. When the trustee recovers, and if he were to elect to recover the property under 550 rather than money, he gets the lease back, and then he realizes there are all these people that claim they have an interest. The trustee then would have to institute litigation to quiet title. Why is it unfair that the trustee can't say, hey, you can't create an override, therefore what I got back was a lease that is unencumbered other than the burden under the lease with the Navajo Nation? The facts here are very confusing, but when you boil it down, that's why the different, there's a distinction here. The assignor, Briggs-Cockerham, tried to create an interest in real property that you're not allowed to do. He didn't try to assign an existing right to real property. So when a trustee wants to quiet title to property he has gotten in the estate, he should be able to raise that your interest is not valid, and he is within that zone. This is not the same thing of the cases where parties to the transaction, or even if you want to go so far as to say that somebody couldn't raise the lack of approval of the lease, this is not the same thing. Because the underlying lease in all those cases was always valid. Finally, the Hertzel case. In Hertzel, I think the distinguishing factor there is you see all of the leases were valid, the assignments were approved, and you have an actor who took action that the court held was equitably inappropriate for him to be able to raise these lack of approvals. That's the protection of why what we're arguing doesn't go too far. If somebody in the trustee's position, not the trustee, did something to prevent the approval or to prevent this inappropriately, there would be available to equitable estoppel defense, which is what the court invoked in Hertzel against Mr. Hertzel, who did a couple things after he lost in state court to try and kind of have a heads, I win, tails, you lose situation. Thank you for your time. I appreciate it. Thank you very much.